# 13-3933-cv

## United States Court of Appeals

### for the

## Second Circuit

▶▶◀◀

CONCORD ASSOCIATES, L.P., CONCORD RACEWAY CORPORATION, CONCORD
KIAMESHA CASINO LLC, CONCORD KIAMESHA CAPITAL CORP., CONCORD RESORT,
LLC, CONCORD KIAMESHA, LLC, CONCORD KIAMESHA HOTEL, LLC,

*Plaintiffs-Appellants,*

– v. –

Entertainment Properties Trust, EPT Concord, LLC, EPT Concord II, LLC, Empire
Resorts, Inc., Monticello Raceway Management, Inc., Genting New York LLC,
John Does 1-5, Kien Huat Realty III Limited,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF DEFENDANTS-APPELLEES KIEN HUAT REALTY III LIMITED AND GENTING NEW YORK LLC

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Howard Zelbo
One Liberty Plaza
New York, NY 10006
212-225-2000

Leah Brannon
2000 Pennsylvania Avenue, NW
Washington, DC 20006
202-974-1500

*Attorneys for Defendants-Appellees Kien Huat
Realty III Limited and Genting New York LLC*

## CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellees Kien Huat Realty III Limited ("Kien Huat") and Genting New York LLC ("Genting NY") hereby certify as follows:

1. Kien Huat has no parent corporation and no publicly held corporation owns more than 10% of Kien Huat's stock.

2. Genting NY is a wholly owned subsidiary of Genting Americas Inc., which, in turn, is a wholly owned subsidiary of Genting East Coast USA Limited, which, in turn, is a wholly owned subsidiary of Genting (USA) Limited, which, in turn, is a wholly owned subsidiary of Genting Worldwide Limited, which, in turn, is a wholly owned subsidiary of Genting Malaysia Berhad, a public company listed on the Main Market of Bursa Malaysia. No publicly held corporation directly owns more than 10% of Genting NY's stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENTS ...................................................... i

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF THE ISSUES ................................................................... 1

PRELIMINARY STATEMENT ............................................................... 2

STATEMENT OF THE CASE ............................................................... 7

      A.    Plaintiffs' Amended Complaint ............................................... 7

      B.    Proceedings in the District Court ........................................... 10

SUMMARY OF ARGUMENT ............................................................... 15

ARGUMENT ........................................................................... 17

  I.     PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM AGAINST KIEN HUAT AND GENTING NY ............................. 17

      A.    Plaintiffs Do Not Allege Sufficient Facts to Support a Plausible Inference That Kien Huat or Genting NY Participated in the Alleged Conspiracy ................................. 18

      B.    Plaintiffs Also Fail to Satisfy the Requirements for Imputing Empire's Alleged Conduct to Kien Huat or Genting NY ........................................................... 26

      C.    The District Court Properly Declined to Consider Plaintiffs' Attempts to Re-Write Their Amended Complaint Through Their Brief in Opposition to the Motion to Dismiss .................................................. 31

  II.    THE DISTRICT COURT CORRECTLY DENIED PLAINTIFFS LEAVE TO FURTHER AMEND THEIR AMENDED COMPLAINT ................................................. 33

  III.   KIEN HUAT IS NOT SUBJECT TO PERSONAL JURISDICTION ................................................................. 36

CONCLUSION ......................................................................... 41

CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)(7)(C) ........................ 42

# TABLE OF AUTHORITIES

**Cases**

*ACEquip Ltd.* v. *Am. Eng'g Corp.*,
   315 F.3d 151 (2d Cir. 2003) ............................................................36

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
   486 U.S. 492 (1988) .......................................................................22

*Am. Protein Corp. v. AB Volvo*,
   844 F.2d 56 (2d Cir. 1988) ........................................................28, 35

*Am. Sales Co. v. AstraZeneca AB*,
   No. 10 Civ. 6062 (PKC), 2011 WL 1465786 (S.D.N.Y. Apr. 14,
   2011) ....................................................................................... 19-20

*Arma v. Buyseasons, Inc.*,
   591 F. Supp. 2d 637 (S.D.N.Y. 2008) ..............................................23

*Arnold Chevrolet LLC v. Tribune Co.*,
   41 F. Supp. 2d 172 (E.D.N.Y. 2006) ................................................27

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*,
   480 U.S. 102 (1987) .......................................................................40

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................17, 21, 26

*Avecmedia, Inc. v. Gottschalk*,
   No. 03 Civ. 7831 (BSJ), 2004 WL 1586411 (S.D.N.Y. July 14,
   2004) .............................................................................................38

*Beacon Enters., Inc. v. Menzies*,
   715 F.2d 757 (2d Cir. 1983) ............................................................37

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007) ...........................................................17, 23, 35

*Bigio v. Coca-Cola Co.*,
   675 F.3d 163 (2d Cir. 2012) ............................................................25

*Chevron Corp. v. Naranjo*,
   667 F.3d 232 (2d Cir. 2012) ............................................................15

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
  370 U.S. 690 (1962) ................................................................. 19-20

*Craig v. Lake Asbestos of Quebec, Ltd.*,
  843 F.2d 145 (3d Cir. 1988) ..........................................................28, 34

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ........................................................... 36-37, 40

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005) .............................................................36

*De Jesus v. Sears, Roebuck & Co.*,
  87 F.3d 65 (2d Cir. 1996) ..................................................... 28-29, 35

*Fletcher v. Atex, Inc.*,
  68 F3d 1451 (2d Cir. 1995) .............................................................25

*Global Networks Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006) .............................................................32

*Greene v. Long Island R.R. Co.*,
  280 F.3d 224 (2d Cir. 2002) .............................................................30

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014) .............................................................36

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
  700 F. Supp. 2d 378 (S.D.N.Y. 2010) ..............................................20

*IHS Dialysis, Inc. v. Davita, Inc.*,
  No. 12 Civ. 2468(ER), 2013 WL 1309737 (S.D.N.Y. Mar. 31,
  2013) ...........................................................................................20

*In re Aluminum Warehousing Antitrust Litig.*,
  No. 13-MD-2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29,
  2014) ...........................................................................................18

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011) .........................................18, 29

*In re Elec. Books Antitrust Litig.*,
  859 F. Supp. 2d 671 (S.D.N.Y. 2012) ..............................................20

iv

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ............................................................ 17-18, 21, 24

*In re Magnesium Oxide Antitrust Litig.*,
  Civ. No. 10-5943 (DRD), 2011 WL 5008090 (D.N.J. Oct. 20,
  2011) ....................................................................................................20

*In re Parcel Tanker Shipping Servs. Antitrust Litig.*,
  541 F. Supp. 2d 487 (D. Conn. 2008)............................................19

*In re Parmalat Sec. Litig.*,
  501 F. Supp. 2d 560 (S.D.N.Y. 2007) ............................................39

*In re Processed Egg Prods. Antitrust Litig.*,
  821 F. Supp. 2d 709 (E.D. Pa. 2011)..............................................21

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,
  230 F. Supp. 2d 403 (S.D.N.Y. 2002) ............................................38

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).........................................................................40

*Invamed, Inc. v. Barr Labs., Inc.*,
  22 F. Supp. 2d 210 (S.D.N.Y. 1998) .........................................21, 27

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998) ....................................................... 38-39

*Marvel Characters, Inc. v. Kirby*,
  726 F.3d 119 (2d Cir. 2013) ............................................................36

*McGowan v. Smith*,
  52 N.Y.2d 268 (1981) ......................................................................38

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
  975 F. Supp. 2d 392 (S.D.N.Y. 2013) .............................................30

*Navarra v. Marlborough Gallery, Inc.*,
  820 F. Supp. 2d 477 (S.D.N.Y. 2011) .........................................24, 27

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield
  of R.I.*,
  883 F.2d 1101 (1st Cir. 1989)..........................................................23

v

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
    797 F.2d 370 (7th Cir. 1986) ............................................................24

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
    08-CV-00042 (JG)(VVP), 2012 WL 3307486 (E.D.N.Y. Aug. 13,
    2012) ....................................................................................................20

*Savage v. Galaxy Media & Mktg. Corp.*,
    No. 11 Civ. 6791(NRB), 2012 WL 2681423 (S.D.N.Y. July 5,
    2012) ....................................................................................................27

*Serdarevic v. Centex Homes, LLC*,
    760 F. Supp. 2d 322 (S.D.N.Y 2010) .................................................32

*Sonnenblick-Goldman Co. v. ITT Corp.*,
    912 F. Supp. 85 (S.D.N.Y. 1996) .......................................................30

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue
    Shield*,
    552 F.3d 430 (6th Cir. 2008) ....................................................... 18-19

*United States v. Bestfoods*,
    524 U.S. 51 (1998).................................................................. 27, 29-30

*Wright v. Ernst & Young LLP.*,
    152 F.3d 169 (2d Cir. 1998) ..............................................................31

## Rules

N.Y. C.P.L.R. § 302(a)(1).......................................................................37

## Other Authorities

New York State Division of the Lottery, "Report and
    Recommendation for a Developer and Operator of the Video
    Lottery Facility at Aqueduct Racetrack" (Aug. 3, 2010) ....................................8

Phillip E. Areeda & Herbert Hovenkamp, <u>Antitrust Law: An Analysis
    of Antitrust Principles and Their Application</u> (3d ed. 2006).............................22

## STATEMENT OF THE ISSUES

1. Did the district court properly dismiss the Amended Complaint against Kien Huat and Genting NY given the absence of any well-pleaded factual allegations that could plausibly support a claim that these Defendants violated the antitrust laws, in addition to the grounds for dismissal set forth in the other Defendants' appellate brief that are also applicable to Kien Huat and Genting NY?

2. Did the district court properly deny Plaintiffs leave to amend their complaint for a second time for the reasons set forth in the other Defendants' appellate brief and because amendment would have been futile as to Kien Huat and Genting NY?

3. Was the Amended Complaint against Kien Huat, an Isle of Man company headquartered in Malaysia, also subject to dismissal on the alternative ground that the court lacked personal jurisdiction over Kien Huat?

## PRELIMINARY STATEMENT

Defendants-Appellees Kien Huat Realty III Limited ("Kien Huat") and Genting New York LLC ("Genting NY") join the arguments for affirmance set forth in the appellate brief submitted by Defendants-Appellees Empire Resorts, Inc. and Monticello Raceway Management, Inc. (collectively, "Empire") and Defendants-Appellees Entertainment Properties Trust, EPT Concord, LLC, EPT Concord II, LLC (collectively, "EPT"), all of which apply with equal force to Kien Huat and Genting NY.  As set forth in the other Defendants' brief, the Amended Complaint was properly dismissed because it fails to allege facts plausibly showing a relevant product or geographic market.  The Amended Complaint was also subject to dismissal because of Plaintiffs' failure to plead facts plausibly showing anticompetitive conduct or antitrust injury.[1]

The Amended Complaint was also properly dismissed with prejudice as to Kien Huat and Genting NY on the alternative ground that it fails plausibly to allege that either of them participated in the purported antitrust conspiracy.  This is a dispute as to whether Plaintiffs or Empire has the right to work with EPT to develop the Concord property.  Plaintiffs assert that EPT is contractually obligated

---

[1]      Plaintiffs-Appellants are Concord Associates, L.P., Concord Raceway Corporation, Concord Kiamesha Casino LLC, Concord Kiamesha Capital Corporation, Concord Resort, LLC, Concord Kiamesha, LLC, and Concord Kiamesha Hotel (collectively, "Plaintiffs").

to work with them; EPT asserts that it is instead entitled to work with Empire. This contract dispute was litigated in state court and resolved in EPT's favor.

Not only are Plaintiffs impermissibly seeking to transform this already-litigated, garden variety contractual dispute between them and EPT into an antitrust case, but in their Amended Complaint they impermissibly named Kien Huat and Genting NY as defendants based on a handful of alleged facts that do not come close to stating a plausible claim that these additional Defendants participated in any alleged conspiracy. The Amended Complaint acknowledges that neither Kien Huat nor Genting NY was party to the Casino Development Agreement ("CDA") at the heart of the contractual dispute between Plaintiffs and EPT. (Joint Appendix ("A") 70 (Amended Complaint ("Am. Cplt.") ¶ 69).) Plaintiffs do not allege that Kien Huat and Genting NY are parties to the various agreements between Empire and EPT that Plaintiffs assert interfered with EPT's obligations under the CDA, namely, the April 2011 Exclusivity Agreement, the June 2011 Master Development Agreement and the December 2011 Option Agreement. (A72, A76, A78 (*Id.* ¶¶ 78, 98, 110).) Nor do Plaintiffs allege that Kien Huat or Genting NY issued the four 2011 press releases or were parties to the Article 78 proceeding about which Plaintiffs complain. (A78, A81 (*Id.* ¶¶ 108, 110, 124).) The Amended Complaint contains no allegation that Kien Huat or Genting New York ever communicated or had any interactions at all with EPT.

The few allegations of fact in the Amended Complaint identifiably directed at Kien Huat or Genting NY are plainly insufficient to satisfy the pleading requirements articulated by the Supreme Court in *Twombly*. Several of these alleged facts pre-date the beginning of the alleged conspiracy and, in any event, reflect routine market activity, such as Kien Huat's having invested in Empire, and Genting NY's winning of a public bid conducted under the auspices of the New York State Lottery to operate a video gaming facility at Aqueduct Racetrack. The district court correctly held that these allegations do not support an antitrust complaint against either Kien Huat or Genting NY.

The Amended Complaint's few allegations of purported events occurring during the time of the alleged conspiracy likewise do not support an antitrust claim. The Amended Complaint alleges that Kien Huat or Genting NY lobbied New York State against the further development of casinos in New York. However, as the district court held and Plaintiffs did not challenge below, lobbying is protected by the *Noerr-Pennington* doctrine and cannot form the basis for an antitrust claim. Similarly unavailing is the allegation that either Kien Huat or Genting NY might finance Empire's and EPT's future development of a casino resort. The allegation is not only wholly speculative, it is also irrelevant: considering providing financing for a project is again routine market activity and not indicative of a violation of the antitrust laws.

4

At bottom, Plaintiffs are seeking to impute liability to Kien Huat and Genting NY based on alleged conduct by Empire, their alleged affiliate. But there is no basis for such imputation. The Amended Complaint includes no facts that could justify piercing the corporate veil, and Plaintiffs did not contend below and do not contend on appeal that they have even pled any basis to pierce the corporate veil. Contrary to the implication of Plaintiffs' argument, they cannot do an end run around the requirement of veil piercing by the mere expedient of alleging that Kien Huat, as the majority shareholder of Empire, "controls" Empire or that Kien Huat, Genting NY and Empire share a common "de facto" officer. Were this sufficient, the law on respecting corporate formalities would be eviscerated. Accordingly, even if Plaintiffs have adequately pled an antitrust claim against Empire and EPT (which is not the case), this Court should still affirm the dismissal of the Amended Complaint against Kien Huat and Genting NY.

The district court also properly denied leave to amend the complaint a second time for the reasons set forth in the district court's opinion and in the other Defendants' brief. As to the futility of amendment, the new factual allegations directed to Kien Huat or Genting NY in the proposed Second Amended Complaint ("Proposed SAC") do not cure Plaintiffs' failure to plead an antitrust claim against them.

The Amended Complaint is also susceptible to dismissal as to Kien Huat because Kien Huat is not subject to personal jurisdiction in New York, an issue the district court did not need to reach given its dismissal of the Amended Complaint on other grounds.  Plaintiffs do not and cannot allege that Kien Huat, an Isle of Man company with its headquarters in Malaysia, is subject to general jurisdiction here.  Kien Huat is not subject to specific jurisdiction because Plaintiffs' claims do not arise out any alleged transaction of business by Kien Huat in New York.

## STATEMENT OF THE CASE

Kien Huat and Genting NY join in the appellate brief filed by Empire and EPT, and below set forth additional aspects of the case pertinent to the further grounds for dismissal applicable specifically to Kien Huat and Genting NY.[2]

### A.    Plaintiffs' Amended Complaint

#### 1.    Allegations Concerning Events Prior to the Start of the Purported Conspiracy in 2011

Several of Plaintiffs' allegations concerning Kien Huat and Genting NY relate to events that occurred in 2009 and 2010, *before* the alleged conspiracy that Plaintiffs claim began in 2011.  (A60 (Am. Cplt. ¶ 19).)

#### a)    Kien Huat's Investment in Empire

The Amended Complaint alleges that Kien Huat purchased over fifty percent of the outstanding common stock of Empire in November 2009.  (A59, A74 (*Id.* ¶¶ 14, 88).)  Kien Huat is an Isle of Man corporation headquartered in Malaysia, and is an investment holding company for investments held under trust for the benefit of Lim Kok Thay ("Mr. Lim"), a Malaysian citizen, and certain members of Mr. Lim's family.  (A63-64 (*Id.* ¶ 36).)

---

[2]    As argued below and not challenged by Plaintiffs below, the dismissal of the Amended Complaint as to Kien Huat and Genting NY would also warrant dismissal against the "John Doe entities 1-5."  Plaintiffs allege only that John Doe entities 1-5 are entities through which Kien Huat purportedly exercises operating control over Empire and Genting NY.  (A60 (Am. Cplt. ¶ 18).)

b)   Genting NY's Winning Public Bid for Rights to Operate a Racino at Aqueduct Racetrack

The Amended Complaint alleges that "shortly []after" Kien Huat's November 2009 investment in Empire, Louis Cappelli introduced Colin Au, alleged to be "an executive of a number of [Kien Huat] affiliates" to the operators of the Aqueduct Racetrack in Queens, New York "with a view to Empire operating a racino there."  (A59, A74 (*Id.* ¶¶ 14, 89).)

On August 3, 2010, the New York State Division of the Lottery announced that Genting NY won a public auction for the right to develop and operate a video lottery facility at Aqueduct Racetrack, now known as Resorts World Casino.  (A74 (*Id.* ¶ 90).)[3]  Resorts World Casino opened in October 2011, and it continues to be owned and operated by Genting NY.  (A59, A64 (*Id.* ¶¶ 16, 40).)

---

[3]   *See also* New York State Division of the Lottery, "Report and Recommendation for a Developer and Operator of the Video Lottery Facility at Aqueduct Racetrack," (Aug. 3, 2010), *available at* http://webcache.google usercontent.com/search?q=cache:Xx8LLEM1MusJ:nylottery.ny.gov/wps/wcm/con nect/1ffa040044bf4be18fb18f3b1ada7a32/AqueductReportandRecommendation.p df%3FMOD%3DAJPERES+&cd=1&hl=en&ct=clnk&gl=us (cached page due to expiration of original link).  Plaintiffs' brief states that Genting NY "acquired" Aqueduct Racetrack.  (Pl. Br. at 24, 29.)  But, as the Amended Complaint acknowledges, Genting NY only bid for and won the rights to develop and operate video gaming operations adjacent to the racetrack (a "racino").  (A74 (Am. Cplt. ¶ 90) (Genting NY "acquired the rights to operate a racino at Aqueduct Park").)

The Amended Complaint alleges that non-defendant Kien Huat Realty sdn bhd is a substantial indirect shareholder in Genting NY through a chain of other non-party corporate entities.  (A64 (*Id.* ¶¶ 37-40).)  It also alleges that Kien Huat is an affiliate of Kien Huat Realty sdn bhd.  (A60, A64 (*Id.* ¶¶ 18, 37).)

2.    Plaintiffs' Conclusory Allegations That Kien Huat Controls Empire and Genting NY

The Amended Complaint alleges that Colin Au is the "*de facto* chief executive" of both Empire and Genting NY.  (A60, A63-64, A74 (*Id.* ¶¶ 18, 36, 90).)  Through "the executive control exercised" by Mr. Au, Kien Huat allegedly "exercises operating control" over Empire and Genting NY.  (A63-64 (*Id.* ¶ 36).)  Plaintiffs do not allege that Mr. Au holds the title of Chief Executive Officer at either Empire or Genting NY, or, indeed, that he is an officer of either company.  Plaintiffs acknowledged to the district court during oral argument on the Motion to Dismiss that Mr. Au is one of the six members of Empire's Board of Directors.  (A585 (Tr. 119:22-24).)  The Amended Complaint does not allege that Mr. Au is a board member of Genting NY.

3.    The Alleged Conspiracy

Apart from legally insufficient, boilerplate, allegations of "control" and "conspiracy," Plaintiffs allege the following regarding Kien Huat and Genting NY:

- Kien Huat and Genting NY are motivated to prevent competition with Empire and Resorts World Casino.  (A61 (Am. Cplt. ¶ 23).)

- Genting NY has "lobbied" the State of New York not to provide gaming licenses in New York within driving distance of Resorts World Casino.  (A75 (*Id.* ¶ 91).)  Plaintiffs also quote press statements made by Mr. Au opposing the expansion of Indian casino gaming. (A75 (*Id.* ¶¶ 92-93).)

- An EPT representative said in an earnings call that the "Genting Group" – a non-party to this action – was the "silent third party behind" Empire.  (A79 (*Id.* ¶ 112).)  Later in its Amended Complaint, Plaintiffs allege that Empire's financing for the development of the Concord Site "would most likely come from Empire's 'silent' third party," which, here, Plaintiffs claim is either Kien Huat or Genting NY.  (A80 (*Id.* ¶ 117).)

## B.  Proceedings in the District Court

### 1.  Kien Huat and Genting NY's Motion to Dismiss

On September 25, 2012, Kien Huat and Genting NY moved to dismiss the Amended Complaint, joining in the arguments made by Empire and EPT, and setting forth additional and independent reasons for dismissal applicable specifically to them.  Kien Huat and Genting NY argued that even assuming that

the Amended Complaint stated a claim against the other Defendants (which it does not) the Amended Complaint lacked any well-pleaded allegations that Kien Huat or Genting NY participated in the alleged conspiracy. Kien Huat and Genting NY further argued that Plaintiffs' attempt to impute Empire's actions to Kien Huat or Genting NY through conclusory allegations of "control" should be rejected. Kien Huat also moved to dismiss on the separate ground that the court lacked personal jurisdiction over it.

Plaintiffs opposed the motion. Along with their opposition brief, Plaintiffs submitted 19 emails and one news article not cited or referred to in the Amended Complaint purportedly to rebut Kien Huat's 12(b)(2) jurisdictional motion, though Plaintiffs also suggested that these extrinsic materials "could provide more particularity" on the merits. (*See* A290-97, 280-87, A921-1003; A266 (Pl. Opp. To Def. (Kien Huat and Genting NY) MTD Br. at 9).) Plaintiffs in their opposition brief also sought to bolster their Amended Complaint with two SEC filings by Empire, its 10-K for fiscal year 2009 filed in March 2010 and its second quarter 2010 10-Q filed in August 2010, neither of which are referred to in the Amended Complaint. All of these documents dated from 2009 through mid-2010, pre-dating the start of the alleged conspiracy in 2011.

2.    The District Court's Opinion Granting Kien Huat and Genting
      NY's Motion to Dismiss

On September 18, 2013, the district court issued an Opinion and

Order granting the Defendants' motions to dismiss.  The district court dismissed

the antitrust claims against all Defendants on the ground that Plaintiffs "failed to

properly plead a relevant market."  (Special Appendix ("SPA") 20.)  As to Kien

Huat and Genting NY, the district court also dismissed the antitrust claims on the

additional and independent ground that the Amended Complaint fails "to connect

each or any individual entity to the overarching conspiracy, or alternatively, satisfy

the requirements for imputing another affiliated entity's liability to the Genting

Defendants."  (SPA39.)

The district court carefully examined the Amended Complaint's

factual allegations concerning Kien Huat or Genting NY and correctly concluded

that they were not sufficient to plausibly show that these Defendants "actually

joined and participated in the conspiracy."  (SPA43 (quotation marks omitted).)

The district court held that the allegations concerning Genting NY's submission of

a bid for the Aqueduct racino are "just as consistent with an alternative, lawful

explanation of events—that Genting NY simply wanted to pursue the Aqueduct

business opportunity."  (SPA45 (quotation marks omitted).)  Also, the allegations

related to Mr. Cappelli's meeting with Mr. Au about Aqueduct pre-dated the

alleged conspiracy by almost two years.  (*Id.*)  The district court also ruled that

12

allegations concerning Genting NY lobbying New York State did not support an antitrust claim in light of the *Noerr-Pennington* doctrine. (SPA42 n.18.)

The district court rejected Plaintiffs' allegations concerning the "likely" source of financing of the Concord site as "speculative at best" and an insufficient "basis to establish Genting NY's or Kien Huat's involvement in the conspiracy." (SPA45.) With respect to the allegations concerning Kien Huat and Genting NY's motivations, the district court held that "even if Genting NY and Kien Huat possessed the motivation" to eliminate potential competition, "this alone is insufficient to establish a conspiracy." (SPA43-44.)

Having rejected the sufficiency of the factual allegations in the Amended Complaint directed at Kien Huat or Genting NY, the district court further explained that the Amended Complaint "predominantly attributes conduct that advanced the conspiracy to various defendants grouped together under a single name, and seeks to impute liability collectively to those various defendants." (SPA46.) The district court rejected such "[g]roup pleading" as "insufficient to withstand review on a motion to dismiss." (SPA47.)

The district court also rejected Plaintiffs' attempt to impute Empire's alleged conduct to Kien Huat or Genting NY. As the district court explained, Plaintiffs "rely solely on alleged chains of ownership from Empire to Kien Huat and associated entities, including numerous foreign non-parties, and down again to

13

Genting NY." (SPA48.) "However, the Amended Complaint fails to allege a basis to disregard the separate corporate forms of these entities." (SPA49-50.) The allegations concerning Kien Huat's control over Empire through Mr. Au as the "*de facto* chief executive*" of Empire and Genting NY were insufficient because of the "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." (SPA50.) Further, the district court rejected Plaintiffs' argument that they are not required to pierce the corporate veil to impute Empire's actions to Kien Huat. (SPA50-51.)

The district court correctly declined to consider the extrinsic materials Plaintiffs submitted with their opposition brief in response to Kien Huat and Genting NY's Motion to Dismiss because "Plaintiffs may no more amend the complaint through motion papers, than Defendants may supplement the record with documents not integral to the complaint." (SPA40 (brackets omitted).) [4]

Having concluded that the Amended Complaint failed to state a claim against Kien Huat, the district court did not reach Kien Huat's 12(b)(2) jurisdictional motion.[5]

---

[4]     Plaintiffs do not appeal this ruling except as to the two Empire SEC filings, discussed further below.

[5]     It was proper for the district court to dismiss the deficient claims against Kien Huat without first reaching its personal jurisdiction defense. As this Court

14

## SUMMARY OF ARGUMENT

This Court should affirm the district court's decision for the reasons set forth in the brief filed by Empire and EPT. This Court should also affirm the district court's decision for several additional reasons that apply specifically to Kien Huat and Genting NY.

*First*, the Amended Complaint fails to plausibly allege that either Kien Huat or Genting NY participated in the alleged antitrust conspiracy. Plaintiffs' allegations that Kien Huat and Genting NY joined a "conspiracy" simply mimic the legal elements of an antitrust claim, but are not factual allegations sufficient to state an antitrust claim. The few facts alleged in the Amended Complaint that are identifiably directed at Kien Huat and Genting NY – that Kien Huat and Genting NY have lobbied against and oppose competition to Genting NY's Resorts World Casino and that they might finance Empire's and EPT's development of a casino at the Concord site – fail to state an antitrust claim and are legitimate and legally-protected market conduct. Plaintiffs' attempt to attribute Empire's alleged conduct to Kien Huat and Genting NY because Kien Huat is the majority shareholder of Empire fails as a matter of law. Plaintiffs have

---

has explained, in cases involving multiple defendants, some of which are subject to personal jurisdiction, the district court may "address first the facial challenge to the underlying cause of action" and if the claim is dismissed in its entirety, "decline to address the personal jurisdictional claims made by some defendants." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 247 n.17 (2d Cir. 2012).

not pled facts sufficient to pierce the corporate veil and, indeed, do not claim to have done so.

      *Second*, permitting Plaintiffs to amend their Amended Complaint would be futile, as the Proposed SAC's new allegations fail to cure the legal infirmities of the Amended Complaint.

      *Third*, the Amended Complaint against Kien Huat is also subject to dismissal on the alternative ground that Kien Huat is not subject to personal jurisdiction.

**ARGUMENT**

**POINT ONE**

**PLAINTIFFS FAIL TO STATE AN ANTITRUST CLAIM AGAINST KIEN HUAT AND GENTING NY**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead sufficient "facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). A plaintiff pleading the existence of an antitrust conspiracy must allege "enough factual matter (taken as true) to suggest that an [unlawful] agreement was made." *Twombly*, 550 U.S. at 556. "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects Rule 8(a)(2)'s threshold requirement that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* at 545 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

"Averments of agreements made at some unidentified place and time . . . are insufficient to establish a plausible inference of agreement, and therefore to state a claim." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Likewise, generalized, undifferentiated allegations "without any

17

specification of any particular activities by any particular defendant" are insufficient.  *Id.*

**A.    Plaintiffs Do Not Allege Sufficient Facts to Support a Plausible Inference That Kien Huat or Genting NY Participated in the Alleged Conspiracy**

The Amended Complaint's factual allegations directed at Kien Huat or Genting NY are insufficient to support a plausible inference that either of them participated in the alleged conspiracy.

1.    <u>The Amended Complaint's Generalized References to Alleged Conduct by "Defendants" as a Group Are Insufficient</u>

The Amended Complaint repeatedly lumps together undifferentiated defendants without allegations as to what Kien Huat and Genting NY actually did that allegedly violated the antitrust laws.  (*See, e.g.,* A72, A78, A81-82, A86, A88, A89-93 (Am. Cplt. ¶¶ 77, 111, 125, 150, 158-159, 162, 165, 167-73, 175-80, 182-83).)  These "generic references to 'defendants'" are insufficient to satisfy *Twombly*.  *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417 (S.D.N.Y. 2011) (citing *In re Elevator Antitrust Litig.*, 502 F.3d at 50-51); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008).  "[E]ach defendant is entitled to know how he is alleged to have conspired, with whom and for what purpose.  Mere generalizations as to any particular defendant—or even defendants as a group—are insufficient."  *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 (KBF), 2014 WL

18

4277510, at *38 (S.D.N.Y. Aug. 29, 2014), supplemented, No. 13-MD-2481 KBF, 2014 WL 4743425 (S.D.N.Y. Sept. 15, 2014) (citing *Twombly*, 550 U.S. at 555-58); *Am. Sales Co. v. AstraZeneca AB*, No. 10 Civ. 6062 (PKC), 2011 WL 1465786, at *5 (S.D.N.Y. Apr. 14, 2011) ("A complaint should offer specification as to the particular activities by any particular defendant. . . .  Rule 8(a) requires that a complaint against multiple defendants indicate clearly . . . the basis upon which relief is sought against the particular defendants.") (quotation marks omitted) (citing *In re Elevator Antitrust Litig.*, 502 F.3d at 50).[6]  "Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*."  *Total Benefits Planning Agency, Inc.*, 552 F.3d at 436-37 (affirming dismissal of antitrust conspiracy claim where the "[p]laintiffs only offer bare allegations without any reference to the 'who, what, where, when, how or why.'").

Contrary to Plaintiffs' argument, *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) does not sanction Plaintiffs' failure to plead facts that could plausibly support an inference of liability as to *each* defendant.  The Supreme Court in *Continental* simply held it was improper in that

---

[6]  *See also In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 491-92 (D. Conn. 2008) (complaint must offer "specifics with respect to the acts of a particular defendant or defendants") (citing *In re Elevator Antitrust Litig.*, 502 F.3d 47).

case for "the Court of Appeals [to] approach[ ] Continental's claims as if they were

five completely separate and unrelated lawsuits." *Id*. at 698-99. Here, the district

court did no such thing. Consistent with *Twombly*, the district court analyzed

Plaintiffs' Amended Complaint as a whole as to each defendant, and rightly found

the pleadings inadequate. (*See* SPA47 ("Group pleading, by which allegations are

made against families of affiliated entities is simply insufficient to withstand

review on a motion to dismiss.")); *see also Precision Assocs., Inc. v. Panalpina*

*World Transp. (Holding) Ltd.*, 08-CV-00042 (JG)(VVP), 2012 WL 3307486, at *1

(E.D.N.Y. Aug. 13, 2012) (rejecting "group pleading" as insufficient to state an

antitrust claim); *Am. Sales. Co.*, 2011 WL 1465786, at *5 (dismissing Section 2

claim because "the Complaint's lack of clarity in attributing conduct traceable to

[individual defendants]" failed to "comport with the basic standards of notice

pleading").[7]

---

[7]     In each of the district court cases cited by Plaintiffs, the court considered the
plausibility of the allegations as to each defendant. *See IHS Dialysis, Inc. v.
Davita, Inc.*, No. 12 Civ. 2468(ER), 2013 WL 1309737 (S.D.N.Y. Mar. 31, 2013)
(analyzing the sufficiency of the complaint's allegations against the only
defendant); *In re Elec. Books Antitrust Litig.*, 859 F. Supp. 2d 671, 682-84
(S.D.N.Y. 2012) (analyzing the coordinated behavior of each defendant); *In re
Magnesium Oxide Antitrust Litig.*, Civ. No. 10-5943 (DRD), 2011 WL 5008090, at
*17-19 (D.N.J. Oct. 20, 2011) (analyzing the sufficiency of the complaint's
allegations of the moving defendant's individual conduct and participation); *Hinds
Cnty., Miss. v. Wachovia Bank N.A.*, 700 F. Supp. 2d 378, 395-98 (S.D.N.Y. 2010)
(discussing separately the particularized allegations made against each of the seven
defendants).

2.    Plaintiffs' Conclusory Allegations Are Entitled to No
      Deference

Nor may Plaintiffs rely on conclusory legal assertions that Kien Huat

or Genting NY "entered into agreements, combinations and conspiracies."  (A60

(Am. Cplt. ¶ 19); *see also*, *e.g.*, A61-62 (*Id.* ¶ 25) (asserting that the defendants

"reach[ed] agreements and understandings" without alleging any facts concerning

Kien Huat or Genting NY's alleged entry into those agreements and

understandings).)  These are legal conclusions completely devoid of any factual

allegations to support them.  "[T]he tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *see also In re*

*Elevator Antitrust Litig.*, 502 F.3d at 50 (it is insufficient for antitrust plaintiffs to

simply aver the existence "of agreements made at some unidentified place and

time"); *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 222 (S.D.N.Y. 1998)

(the plaintiff could not "neutralize" the "inadequacy of its pleadings by urging that

[the defendant] joined the 'contract, combination or conspiracy'").[8]

---

[8]     *See also In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 709,
720 (E.D. Pa. 2011) ("Conclusory, collective language is too convenient, too
undisciplined, and too unfocused in light of exposures to litigation expense and
disruption (even without ultimate liability) that are so great in antitrust (and other)
cases.") (citing *Twombly*, 550 U.S. at 565 n.10).

3.    Plaintiffs' Few Non-Conclusory Allegations Are Insufficient to State a Claim

Plaintiffs concede (as they must) that the Amended Complaint must allege wrongful conduct by each named defendant.  (*See* Pl. Br. at 28 (agreeing that "a parent-subsidiary relationship, *standing alone*, without any action by the parent, is an insufficient basis for the parent's inclusion in a conspiracy claim") (emphasis in original).)  On pages 28-29 of their brief, Plaintiffs list the Amended Complaint's allegations that they believe "plausibly support a combination or conspiracy involving the Genting Defendants."  Plaintiffs manage to list only three sets of inadequate allegations.

Plaintiffs first point to paragraphs 91-94 of the Amended Complaint, (A75-76), in which Plaintiffs allege that Genting NY has "lobbied against New York providing gaming licenses anywhere within driving distance of Resorts World Casino."  But lobbying is protected by the *Noerr-Pennington* doctrine, under which private entities are immune from antitrust liability based on actions intended to influence legislation, adjudication, or executive and administrative machinery.  *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988) ("Concerted efforts to restrain or monopolize trade by petitioning government officials are protected from antitrust liability."); *see also* Phillip E.

22

Areeda & Herbert Hovenkamp, <u>Antitrust Law: An Analysis of Antitrust Principles and Their Application</u> ¶ 201 (3d ed. 2006).[9]

Second, Plaintiffs cite the (closely-related) allegations in paragraphs 139 to 142 of their Amended Complaint, (A84-85), that Kien Huat and Genting NY are "opposed to the development of the New Concord Casino Resort or any other new competition in New York State within driving distance of Resorts World Casino." This appears to rehash the allegations that Genting NY supposedly lobbied against new casinos, and thus reflects conduct protected by the *Noerr-Pennington* doctrine for the reasons just discussed. Moreover, "resisting competition is routine market conduct," and, if a desire not to compete were sufficient to state a claim, "pleading a [Section] 1 violation against almost any group of competing businesses would be a sure thing." *Twombly*, 550 U.S. at 566.[10]

---

[9] In addition, as the district court held, Plaintiffs abandoned this argument based on Kien Huat's or Genting NY's alleged lobbying efforts by failing to address the *Noerr-Pennington* doctrine in their opposition brief on the Motion to Dismiss, after the argument was raised in Defendants' moving brief. (*See* SPA44 n.18); *see also Arma v. Buyseasons, Inc.,* 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."). Plaintiffs are thus barred from challenging on appeal the applicability of the *Noerr-Pennington* doctrine to their lobbying allegations.

[10] *See also Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*, 883 F.2d 1101, 1113 (1st Cir. 1989) ("[T]he desire to crush a competitor, standing alone, is insufficient to make out a violation of the antitrust

Third, Plaintiffs contend that the Amended Complaint "alleg[es] that Kien Huat . . . would most likely provide the necessary funding for Empire's development plan with the EPT Defendants."  (Pl. Br. at 29 (citing A79, A80 (Am. Cplt. ¶¶112-13, 117)).)  What the Amended Complaint actually alleges is that Empire's financing would "most likely come from . . . Genting [NY] or  . . . Kien Huat."  (A80 (Am. Cplt. ¶ 117).)[11]  Even crediting Plaintiffs' new version of the facts, their articulation is still, by its terms, entirely speculative, as the district court concluded, and does not plausibly suggest that Kien Huat actually joined in the alleged antitrust conspiracy, and of course says nothing at all about Genting NY. (*See* SPA45); *see also In re Elevator Antitrust Litig*., 502 F.3d at 50-51; *Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 487 (S.D.N.Y. 2011) ("There is no evidence beyond abject speculation that [the competitor] committed any wrongdoing.  Such guesswork is insufficient to state a claim.").

---

laws."); *Olympia Equip. Leasing Co. v. W. Union Tel. Co*., 797 F.2d 370, 378 (7th Cir. 1986) ("[I]f conduct is not objectively anticompetitive the fact that it was motivated by hostility to competitors . . . is irrelevant.").

[11]    In another paragraph, the Amended Complaint makes the contradictory allegation that the "Genting Group"—a non-party to this action—"was involved in . . . the development plans for the Concord Site, as the 'silent third party behind' Empire."  (A79 (Am. Cplt. ¶ 112).)  As the district court noted, according to Plaintiffs, the "Genting Group" consists of non-defendant Genting Berhad and subsidiaries and affiliates operating under the "Genting" name.  (SPA49; *see also* A64 (Am Cplt. ¶ 38).)

Allegations of possible future financing between corporate affiliates are in any event entirely consistent with routine market conduct and cannot be the basis for an antitrust claim. *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175-76 (2d Cir. 2012) (concluding that allegations that the parent invested in its subsidiary "amount to nothing more than the usual concomitants of the relationship between a parent and a partially-owned subsidiary"); *Fletcher v. Atex, Inc.*, 68 F3d 1451, 1459-60 (2d Cir. 1995) (declining to find alter ego liability based on the intermingling of funds between parent and subsidiary, and ruling that parent did not dominate the subsidiary even though parent's approval was required before subsidiary could engage in key transactions and the parent played a significant role in certain transactions).

Plaintiffs make the related assertion in their brief that "Kien Huat is financing the development of its and Genting [NY]'s Resorts World Casino at Aqueduct." (Pl. Br. at 29.) This allegation appears nowhere in the Amended Complaint. The closest allegation is that Mr. Cappelli introduced Mr. Au to the operators of Aqueduct, and Genting NY subsequently successfully bid for the rights to operate a racino there. (*See* A74 (Am. Cplt. ¶¶ 89-90).) This does not assist Plaintiffs. As the district court properly concluded, the allegations concerning Genting NY's submission of a bid for the Aqueduct racino are "just as consistent with an alternative, lawful explanation of events—that Genting NY

25

simply wanted to pursue the Aqueduct business opportunity." (SPA45 (quotation marks omitted).) The alleged meeting between Mr. Au and Mr. Cappelli related to Aqueduct pre-dated the alleged conspiracy by almost two years and has nothing to do with the contractual dispute between Plaintiffs and EPT. (*Id.*)

Finally, Plaintiffs' far-fetched attempt to liken Kien Huat to a "classic trust" in the model of "late nineteenth century . . . industrial oligopolies and monopolies," (Pl. Br. at 26 n.14), is, at best, a legal characterization. *See Iqbal*, 556 U.S. at 678. Nor is this "classic trust" allegation pled anywhere in the Amended Complaint. In any event, Kien Huat having obtained a majority interest in Empire and thereafter Genting NY winning a public bid to operate the racino at Aqueduct are entirely consistent with legitimate business activities and do not support a plausible inference of an antitrust conspiracy.

## B. Plaintiffs Also Fail to Satisfy the Requirements for Imputing Empire's Alleged Conduct to Kien Huat or Genting NY

Having failed to plausibly allege that either Kien Huat or Genting NY participated in the alleged conspiracy, Plaintiffs seek to impute Empire's alleged conduct to Kien Huat and Genting NY on the theory that Kien Huat "controls" Empire. (*E.g.*, A63-64 (Am. Cplt. ¶ 36).) Plaintiffs' allegation of "control" likewise is insufficient to state an antitrust claim against these Defendants.

Rather than actually pleading veil piercing and alleging supporting facts, the Amended Complaint instead rests on two primary assertions: the

26

conclusory assertion that Kien Huat controls Empire, and the claim that Colin Au is the "de facto chief executive" — a label invented by Plaintiffs — of both Empire and Genting NY. (A60, A63-64 (*Id.* ¶¶ 18, 36).) Neither of these assertions is sufficient to impute liability to Kien Huat or Genting NY for the alleged actions of Empire.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). In particular, "in the antitrust context, courts have held that absent allegations of anticompetitive conduct by the parent, there is no basis for holding a parent liable for the alleged antitrust violation of its subsidiary." *Arnold Chevrolet LLC v. Tribune Co.*, 41 F. Supp. 2d 172, 178 (E.D.N.Y. 2006); *see also Invamed,* 22 F. Supp. 2d at 222 (dismissing plaintiffs' antitrust claims against a parent corporation, ruling that "an alleged acquisition" of a subsidiary by a parent "does not give rise to a claim for conspiracy under the Sherman Act"); *Savage v. Galaxy Media & Mktg. Corp.*, No. 11 Civ. 6791(NRB), 2012 WL 2681423 (S.D.N.Y. July 5, 2012) (concluding that liability may not be imposed on a parent due to its majority ownership or control of a subsidiary); *Navarra,* 820 F. Supp. 2d at 487 (granting motion to dismiss Sherman Act claim where the complaint "relie[d] on the assertion" that a defendant

27

"was somehow behind the acts" of other individuals, finding this to be "too speculative and conclusory"). "It is assumed to be the norm that a parent will have not only the potential to exercise control over the subsidiary, but to exercise it to a substantial degree." *Craig v. Lake Asbestos of Quebec, Ltd*., 843 F.2d 145, 150 (3d Cir. 1988) (brackets, ellipses, and quotation marks omitted) (reversing district court's decision to pierce corporate veil even though the parent's "majority share of stock ownership gave it an 'omnipresence in the minds of the [subsidiary's b]oard members' such that [the subsidiary] was nothing more than an 'operating division'" of the parent).

"To overcome the presumption of separateness afforded to related corporations, Plaintiffs must come forward with the showing of actual domination required to pierce the corporate veil." *De Jesus v. Sears, Roebuck & Co*., 87 F.3d 65, 70 (2d Cir. 1996) (quoting *Williams v. McAllister Bros. Inc*., 534 F.2d 19, 22 (2d Cir. 1976)). Plaintiffs must further show that "[t]he parent . . . exercise[d] complete domination *in respect to the transaction attacked* so that the subsidiary had at the time no separate will of its own . . . ." *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988) (emphasis added) (internal quotation marks omitted) (rejecting plaintiff's attempt to pierce the corporate veil where the "strongest piece of evidence to support control was the existence of interlocking directorates.").

At no point in this litigation have Plaintiffs argued that they are even attempting to pierce the corporate veil, nor have they suggested that any version of their complaint is sufficient to do so. For this reason, their attempt to impute Empire's actions to either Kien Huat or Genting NY must fail. To the extent Plaintiffs assert that they are somehow able to impute Empire's actions to Kien Huat without piercing the corporate veil, they are mistaken. *De Jesus*, 87 F.3d at 70; *In re Digital Music*, 812 F. Supp. 2d at 419 ("Whether the joint ventures or subsidiaries did anything actionable is not relevant with respect to the liability of the Parent Companies absent a basis to pierce the corporate veil.").

The Amended Complaint's allegation that Colin Au is the "de facto chief executive" of both Empire and Genting NY does not assist Plaintiffs. Plaintiffs fail to allege any facts that could plausibly support their assertion that Mr. Au, a single director of Empire's six-person board, "controls" either Empire (a publicly traded company) or Genting NY (a subsidiary of a different publicly traded company, whose board Plaintiffs do not actually allege Mr. Au is on). Even if Mr. Au was alleged to be on the board of both companies *and* was an influential member on both boards, it is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership" and this provides no basis to disregard corporate structure. *Bestfoods*,

29

524 U.S. at 69; *see also Greene v. Long Island R.R. Co.*, 280 F.3d 224, 235 (2d Cir. 2002) ("[C]orporate ownership of a subsidiary and overlapping offices and directorates are not, without more, sufficient to impose liability on the parent for conduct of the subsidiary[.]").

To the extent Plaintiffs are arguing that common directors and officers are only presumed to "change hats" in "non-antitrust cases," (*see* Pl. Br. at 29), they are mistaken. Plaintiffs do not and cannot cite any authority to support this assertion. Courts considering antitrust claims rely on the same presumption of corporate separateness, and hold that the existence of common directors is insufficient to impute one company's liability to another. *See, e.g.*, *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC,* 975 F. Supp. 2d 392, 404 (S.D.N.Y. 2013) (granting motion to dismiss antitrust claims against parent corporation even though plaintiff has made allegations of overlapping management, reasoning "it is well established law that allegations of mere shared management, shared corporate principles, or a parent's ownership of a subsidiary—even exclusively for the parent's gain—do not merit piercing the corporate veil.") (citing *Bestfoods*, 524 U.S. at 61–62).

In any event, control of a subsidiary's board (which is not even adequately alleged here) is only one of many factors courts consider in a veil-piercing analysis. *See Sonnenblick-Goldman Co. v. ITT Corp.*, 912 F. Supp. 85, 89

30

(S.D.N.Y. 1996) (granting motion to dismiss because allegations were inadequate to pierce the corporate veil, considering factors including inadequate capitalization, failure to observance of corporate formalities, and siphoning of funds). Plaintiffs fail to allege any such facts in the Amended Complaint.

For these reasons, Plaintiffs' attempt to impute liability to Kien Huat and Genting NY based on Empire's alleged conduct was properly rejected by the district court.

## C. The District Court Properly Declined to Consider Plaintiffs' Attempts to Re-Write Their Amended Complaint Through Their Brief in Opposition to the Motion to Dismiss

In their opposition brief on the Motion to Dismiss, Plaintiffs also sought to incorporate alleged facts that were nowhere pled in the Amended Complaint based on two SEC filings made by Empire in 2010. (A268-69.) Contrary to Plaintiffs' argument, the district court correctly held that even if it "could theoretically take judicial notice of these documents as public records," it could not consider the truth of the "statements set forth in the documents" for purposes of testing the sufficiency of the Amended Complaint because neither the documents nor the facts that Plaintiffs sought to infer from those documents were part of the Amended Complaint. (SPA41.)

It is settled that a plaintiff cannot cure defects in a complaint through new allegations made in a brief opposing a motion to dismiss. *Wright v. Ernst &*

31

*Young LLP.*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting plaintiff's attempt to amend her complaint through motion papers); *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 330 (S.D.N.Y 2010); *see also Global Networks Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (reversing a district court's ruling accepting as true on a motion to dismiss statements in a public record (a transcript of a criminal trial and a city agency final determination) not referenced in the complaint). Neither Empire's SEC filings nor the "facts" stated therein are referenced in the Amended Complaint. Plaintiffs do not dispute this but respond that the rules should be relaxed where it is the plaintiff rather than the defendant who is seeking to introduce extraneous material. (Pl. Br. at 32-33.) Plaintiffs cite no law to support this because none exists. A plaintiff simply may not after-the-fact try to cure its defective pleading by submitting a brief that includes extraneous information that the plaintiff chose not to include in its complaint.

In any event, the statements in Empire's SEC filings, even if considered for purposes of the Motion to Dismiss, cannot save Plaintiffs' pleading. Plaintiffs argue that Empire's 2009 10-K lists the Aqueduct Racetrack as a competitor to Empire's Monticello harness race track, while Empire's second quarter 10-Q does not do so. It is obviously not indicative of a violation of the antitrust laws for a company from time to time to list different competitors, or

32

different potential future competitors, in its SEC filings. According to Plaintiffs, the SEC filings can only lead to one of two inferences: either Empire and Genting NY "have entered into an agreement" between themselves not to compete—an allegation not made in the Amended Complaint—or there is "common control between" Empire and Genting NY. (Pl. Br. at 30.) Plaintiffs' first proposed inference, that Empire and Genting NY have agreed not to compete with each other, cannot be taken seriously. Plaintiffs fail to identify any action taken by Empire or Genting NY to this end, the time period of the alleged difference in language between two different SEC filings predates the alleged conspiracy by two years, and what any of this has to do with Plaintiffs' failed efforts to develop the New Concord Casino remains a mystery. The second possible inference that Plaintiffs assert, that Empire and Genting NY are affiliated (even if an appropriate inference), does not plausibly show they joined a conspiracy, nor does it provide a basis to pierce the corporate veil.

## POINT TWO

## THE DISTRICT COURT CORRECTLY DENIED PLAINTIFFS LEAVE TO FURTHER AMEND THEIR AMENDED COMPLAINT

For the reasons set forth in Empire's and EPT's brief, the district court properly denied Plaintiffs leave to file the Proposed SAC. Plaintiffs did not seek leave to amend if their Amended Complaint was found to be deficient. The

Proposed SAC also failed to cure the defects in the Amended Complaint and
therefore the amendment would have been futile.

As to futility, in addition to the arguments set forth in Empire and
EPT's brief, the Proposed SAC does not cure the Amended Complaint's failure to
plead that Kien Huat or Genting NY participated in the alleged conspiracy. The
Proposed SAC continues to rely on the misplaced theory that Kien Huat's
supposed "control" over Empire, absent veil piercing, can provide a basis for
imputing liability to Kien Huat and Genting NY. In addition to the facts relating
to Empire's SEC filings which, as set forth above, do not at all assist Plaintiffs, the
Proposed SAC alleges only two new and irrelevant facts: (i) Mr. Lim told Joseph
Bernstein, the then-CEO of Empire, that he "appointed Colin Au, along with
Empire Chairman Mickey Brown[] to be in charge of Empire" for him and Mr. Au
told Mr. Bernstein that management should implement Kien Huat's objectives,
(A698 (Proposed SAC ¶ 93)); and (ii) Mr. Lim was physically present in New
York in 2009 and took a tour of Aqueduct Park and the Catskills region, (A697 (*id.*
¶ 89)). These allegations do not cure the deficiencies of the Amended Complaint.

Even if Mr. Lim told the CEO of Empire that he appointed Messrs.
Au and Brown to lead Empire for him, this is insufficient to pierce the corporate
veil. *See Craig*, 843 F.2d at 150 ("It is assumed to be the norm that a parent will
have not only the potential to exercise control over the subsidiary, but to exercise it

to a substantial degree."). Rather, Plaintiffs must allege, among other things, "actual domination" of the subsidiary by the parent corporation. *De Jesus*, 87 F.3d at 70. Plaintiffs would also need to connect alleged domination "to the transaction attacked." *Am. Protein Corp.*, 844 F.2d at 60. Plaintiffs make no attempt to do so here.

Plaintiffs' second new allegation, that Mr. Lim travelled to New York in 2009, is likewise insufficient to pierce the corporate veil. This alleged trip is in no way connected to the alleged conspiracy or to Kien Huat's purported "control" over Empire. In fact, the trip predates the alleged conspiracy by two years. (*See* A60 (Am. Cplt. ¶ 19) (conspiracy "beg[an] in 2011"); A682 (Proposed SAC ¶ 20).)[12] It also occurred months prior to Kien Huat's investment in Empire. (*See* A697 (*Id.* ¶ 89) (tour occurred in July 2009); A59 (Am. Cplt. ¶ 14) (Empire acquisition in November 2011).) Moreover, the alleged tour is fully consistent with an "obvious alternative explanation": namely, Mr. Lim was exploring prospective business opportunities. *Twombly*, 510 U.S. at 567.

Plaintiffs' continued attempts to amend their pleadings cannot cure their fatally flawed claims.

---

[12] The Proposed SAC adds vague assertions that "groundwork" for a conspiracy was laid earlier, but does not alter the central allegation that the purported unlawful agreement began in 2011. (A682 (Proposed SAC ¶ 20).)

## POINT THREE

## KIEN HUAT IS NOT SUBJECT TO PERSONAL JURISDICTION

Kien Huat also moved to dismiss the Amended Complaint because it is not subject to personal jurisdiction, an issue which the district court did not need to reach. Where, as here, the district court has not made any factual findings concerning personal jurisdiction, this Court considers the issue of personal jurisdiction de novo. *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).

Plaintiffs provide no basis for the exercise of personal jurisdiction over Kien Huat.[13] Plaintiffs did not assert below that Kien Huat was subject to general jurisdiction in New York, (A269-72 (Pl. Opp. To Def. (Kien Huat and Genting NY) MTD Br. at 17-21)), and they are therefore barred from making such an argument on appeal. Plaintiffs have not alleged that Kien Huat is incorporated or has its principal place of business in New York. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134-35 (2d Cir. 2014). Instead, Plaintiffs allege that Kien Huat is an Isle of Man

---

[13]   This Court "may, of course, affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." *ACEquip Ltd.* v. *Am. Eng'g Corp.*, 315 F.3d 151, 155 (2d Cir. 2003); *see also Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 421 (2d Cir. 2005) (affirming dismissal of plaintiffs' complaint, which the district court had dismissed based on lack of antitrust standing, on the alternative grounds of lack of personal jurisdiction and lack of venue).

corporation headquartered in Kuala Lumpur, Malaysia, and that it is an investment

holding company for investments held under trust for the benefit of Mr. Lim, a

Malaysian citizen.  (A63-64 (Am. Cplt. ¶ 36).)  The mere fact that Kien Huat owns

a majority of the outstanding common stock of Empire is not a basis to assert

personal jurisdiction over Kien Huat in New York.  *See Daimler*, 134 S. Ct. at 760

("subject[ing] foreign corporations to general jurisdiction whenever they have an

in-state subsidiary or affiliate . . . would sweep beyond even the 'sprawling view of

general jurisdiction' [that the Court previously] rejected in [its decision] in

*Goodyear*.") (citation omitted).

 Nor can Plaintiffs show a basis for specific jurisdiction over Kien

Huat.  To invoke specific jurisdiction under N.Y. C.P.L.R. § 302(a)(1), a defendant

must have "transact[ed] . . . business within the state" and the plaintiff's claim

must "*aris[e] from*" that activity.  N.Y. C.P.L.R. § 302(a)(1) (emphasis

added).  The defendant's alleged transacting of business in New York must bear a

"substantial relationship" to the claims.  *Beacon Enters., Inc. v. Menzies*, 715 F.2d

757, 764 (2d Cir. 1983).  The allegations concerning Mr. Lim's alleged tour of the

Catskills and Aqueduct in 2009 (even if attributable to Kien Huat) and Kien Huat's

investment in Empire in 2010 predate the alleged conspiracy.  (*See* A697

(Proposed SAC ¶ 89); A59-60 (Am. Cplt. ¶¶ 14, 19).)  Plaintiffs' claims with

respect to their efforts to develop the New Concord Casino Resort plainly do not

arise out of these alleged activities. *See Avecmedia, Inc. v. Gottschalk*, No. 03 Civ. 7831 (BSJ), 2004 WL 1586411, at *5 (S.D.N.Y. July 14, 2004); *McGowan v. Smith*, 52 N.Y.2d 268, 273 (1981).

      Because Plaintiffs' claims do not arise out of any action taken by Kien Huat in New York, Plaintiffs below again relied on the flawed theory that Kien Huat purportedly controls Empire. However, for the same reasons Plaintiffs cannot impute Empire's actions to Kien Huat or Genting NY on the merits, they cannot do so for purposes of obtaining personal jurisdiction over Kien Huat. To impute the actions of Empire to Kien Huat for jurisdictional purposes based on Kien Huat's alleged control or domination of Empire, Plaintiffs must plead facts showing that Empire is an alter ego or a mere department of Kien Huat. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998). Plaintiffs plead no such facts.

      In determining whether an entity is an alter ego or "mere department" of another, courts consider four factors: (1) "common ownership – which is essential"; (2) "financial dependency of the subsidiary on the parent"; (3) the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities"; and (4) "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." *Jazini*, 148 F.3d at 184-185; *see also In re Ski*

*Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 403, 410 (S.D.N.Y. 2002) ("A corporate entity is considered to be a 'mere department' of a parent company only where the control of the lesser entity is pervasive enough that the corporate separation is more formal than real.") (internal quotation marks omitted). Plaintiffs' allegations come nowhere close to satisfying this standard.

Any suggestion that personal jurisdiction over Kien Huat can be based on the actions of Messrs. Au or Brown in New York is similarly flawed. (*See* A60 (Am. Comp. ¶ 18) (alleging that Mr. Au as "*de facto* chief executive" of Empire and Genting NY); A698 (Proposed SAC ¶ 93) (alleging that Mr. Lim stated that he appointed Messrs. Au and Brown "to be in charge of Empire" for him).) As discussed above, "courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary." *In re Parmalat Sec. Litig.*, 501 F. Supp. 2d 560, 588 (S.D.N.Y. 2007) (alteration and internal quotation marks omitted); *see also Jazini*, 148 F.3d at 185 (subsidiary was not a "mere department" of the parent even though the subsidiary's chairman was also a managing executive director of the parent). As a consequence, Mssrs. Au and Brown are presumed to have been acting on behalf of Empire; Kien Huat was not "transacting business" through them for purposes of N.Y. C.P.L.R. § 302(a)(1). In their opposition brief below, Plaintiffs argued that Kien Huat is subject to personal jurisdiction because Mr. Au is a purported co-conspirator of Kien Huat

39

and Mr. Au acted in New York.  This allegation, which was not pled in the Amended Complaint, fails for the same reason.

The exercise of personal jurisdiction over Kien Huat also would not satisfy due process and comport with traditional notions of fair play and substantial justice.  *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The fact that Kien Huat purchased a majority interest in Empire is insufficient to hail it into a court in NY based on Empire's alleged conduct.  *See Daimler*, 134 S. Ct. at 763 (exercising personal jurisdiction over a foreign parent company based on the alleged activities of its wholly owned domestic subsidiary "would not accord with the 'fair play and substantial justice' due process demands") (internal citations omitted).

## CONCLUSION

For the reasons stated above and in the brief of the other Defendants,

this Court should affirm the district court's dismissal of Plaintiffs' Amended

Complaint with prejudice.

Dated:      January 21, 2015
            New York, N.Y.

                              Respectfully submitted,

                              CLEARY GOTTLIEB STEEN &
                              HAMILTON LLP


                          By:  */s/ Howard Zelbo*
                              Howard Zelbo
                              One Liberty Plaza
                              New York, NY 10006
                              Telephone: (212) 225-2000
                              Facsimile: (212) 225-3999
                              hzelbo@cgsh.com



                          By:  */s/ Leah Brannon*
                              Leah Brannon
                              2000 Pennsylvania Avenue, N.W.
                              Washington, D.C. 20006
                              Telephone: (202) 974-1500
                              Facsimile: (202) 974-1999
                              lbrannon@cgsh.com


                              *Attorneys for Defendants-Appellees Genting
                              New York LLC and Kien Huat Realty III
                              Limited*

41

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)(7)(C)

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,103 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Word Version 14 in 14-point Times New Roman font.

Dated:      January 21, 2015
              New York, N.Y.

Respectfully submitted,

*/s/ Howard Zelbo*
Howard S. Zelbo
CLEARY GOTTLIEB STEEN & HAMILTON LLP
1 Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Defendants-Appellees
Genting New York LLC and Kien Huat
Realty III Limited*

42